IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANET EDWARDS, *et al.*, )
)
    Plaintiffs, )
v. )    Case No. 2:15-cv-902-TMP
)
CLINICAL RESEARCH )
CONSULTANTS, INC., JAMES )
R. KILGORE, LAURA FARLEY, )
and ROXANNE REEVES, )
)
    Defendants. )

## **MEMORANDUM OPINION AND ORDER**

This matter is before the court on the motions for partial summary judgment filed by defendant Clinical Research Consultants, Inc., ("CRC") (doc. 45), defendant Laura Farley (doc. 46), defendant Richard Kilgore (doc. 51), and the plaintiffs (doc. 48). The motions are supported by evidence and the parties have been given the opportunity to fully brief the motions.[1] The parties have consented to the jurisdiction of the undersigned magistrate judge; accordingly, the court enters this Memorandum Opinion.

---

[1] Defendant CRC did not respond to the plaintiffs' motion. The briefs of the other parties indicate that CRC is now defunct and formally dissolved.

# I.   BACKGROUND

The plaintiffs, Janet Edwards, Betsy Brigham-Hoke, and Tina Buchanan, filed a complaint against Clinical Research Consultants, Inc., ("CRC"), James Richard Kilgore, Laura Farley, and Roxanne Reeves, alleging that they were employed by CRC, and that they performed work for CRC but were not paid for all of the hours they worked, in violation of the Fair Labor Standards Act of 1938, 20 U.S.C. § 201 *et seq*. ("FLSA"), and in violation of state-law principles governing contractual and quasi-contractual relations.   They assert that CRC was their employer.   The complaint further asserts that Kilgore, CRC's president; Farley, its vice president; and Reeves, its controller also exerted control as employers.

Plaintiffs allege that the defendants violated the FLSA by failing to pay the plaintiffs the minimum and overtime wages mandated by federal law (Count I), and that the violations of the FLSA were willful.   (Count II).   Plaintiffs assert, in the alternative, that CRC breached contracts to pay wages that it had agreed to pay the plaintiffs (Count III), and that CRC was unjustly enriched by the unpaid work provided by the plaintiffs (Count IV).[2]

---

[2]      The plaintiffs' claims based upon breach of contract (Count III) and quantum meruit (Count IV), have been dismissed as to Reeves and Farley.   (Docs. 30, 32).   In their brief, plaintiffs further agree to "voluntarily dismiss their alternative claims (quantum meruit/breach of contract) as relates to Kilgore."   (Doc. 61, p. 14, n.1).   Accordingly, Kilgore's motion for summary judgment (doc. 51) is GRANTED IN PART, in that the claims set forth as Counts III

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.   Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."   Id. at 323.

---

and IV are dismissed as against Kilgore.   Kilgore's separate motion to dismiss Counts III and IV (doc. 44) is now MOOT.   Counts III and IV remain pending only against CRC.   Plaintiffs further have stated that they have settled their claims with Reeves, pending approval of the settlement by the court.   To date, no motion seeking approval of the settlement has been filed.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every

reasonable inference.   <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


### III.   FACTS

Because there are cross motions for summary judgment, the court must view the facts in the light most favorable to the nonmovants, and each party is, with respect to at least one motion, a nonmovant.   The court begins with a discussion of the defendants' motions, viewing the facts in the light most favorable to the plaintiffs.

CRC was a corporation doing business in Alabama.   The company conducted clinical trials for pharmaceutical companies seeking approval by the Federal Drug Administration ("FDA") for drugs, medical devices, and medical procedures to be sold nationwide.   The owners of CRC included Kilgore, Reeves, and Farley.   Beginning in 2012, and continuing until the corporation's dissolution, CRC did not generate sufficient revenues to cover its financial obligations, including payroll.   Due to the financial downturn of CRC, none of the employees, including the individual defendants, received their full salaries during 2012 and 2013.   Plaintiffs continued to work for CRC, however, and at times may have worked more than 40 hours per week.   Kilgore, as the CEO of the

corporation, repeatedly urged the plaintiffs to continue working, even without pay, saying that the financial fortunes of the company were about to turn around. CRC ceased operations and was dissolved on February 11, 2014. On May 29, 2015, the plaintiffs filed this action, seeking unpaid wages, liquidated damages, equitable relief, attorneys' fees, costs, and expenses.

Plaintiff Tina Buchanan was employed by CRC as Director of Regulatory Affairs in the Regulatory Department. She worked at CRC full-time from April 2005 until February 2013, and worked part-time on an hourly basis from February 2013 until June 2013. She was the only employee of the Regulatory Department. She reported to defendant Reeves until Reeves left the company, and then she reported directly to defendant Kilgore. Kilgore set Buchanan's work hours and established her salary. Buchanan described her job as "pushing paper" needed to begin the clinical studies by filling in preprinted forms. She denied that she exercised any discretionary decisionmaking authority. A job description of her position labeled the job as "FLSA Status: Exempt – Administrative," although Ms. Buchanan testified that she did not really understand what that meant. (Doc. 45-5, pp. 8-9, Exh. 2 to Buchanan Depo. and doc. 45-6, p. 5, Buchanan Depo.). Her salary as of 2012 was $866.82 per week.

Plaintiff Betsy Brigham-Hoke was employed by CRC in the accounting/finance department. She was hired in April 2005 as an assistant to comptroller Reeves, and in 2006 was given the title of Accounting Assistant. She was terminated in October 2012. She passed information along to the accounting company for processing of the payroll. She did not supervise any employees, and she was supervised by Kilgore. She spent much of her time answering phones, greeting people, and filing. She reported to Reeves, and she took over some of Reeves' duties when Reeves left. Brigham-Hoke reported directly to Kilgore after Reeves left. Kilgore hired her, evaluated her, and determined her rate of pay. Her salary, beginning in 2012, was $961.54 per week.

Plaintiff Janet Edwards was employed by CRC as a clinical research consultant from February 2001 through September 2013. Her duties including general patient work-ups, including blood work and taking vital signs. She was a licensed practical nurse, although a nursing certificate was not required for the tasks that she was assigned. She did not supervise any other employees, and she was supervised by Farley. In 2009, Edwards filed a petition in the United States Bankruptcy Court for relief under Chapter 13 of the Bankruptcy Code. She was discharged in 2014, having made 100 percent repayment to her creditors. She did

not list any claim against CRC as an asset at any time during the bankruptcy proceeding.  Her salary, beginning in 2012, was $895.25 per week.

Each of the three plaintiffs stated that they named Farley as a defendant because she was an owner of the company.  Farley once paid $5,100.00 of her own funds to pay a monthly Blue Cross/Blue Shield insurance premium on behalf of CRC, which she described as a loan to the company.  Farley also paid about $2000.00 of her own funds for "sundry supplies" for CRC.  (Doc. 62-5, Farley Responses to Interrogatories).

Kilgore set the pay rate for each employee and was responsible for hiring and firing employees.  His job duties at CRC included "oversight of marketing, clinical operations, regulatory compliance and financial operations."  (Doc. 62-6, Kilgore Responses to Interrogatories).  Both Farley and Kilgore knew that the plaintiffs had worked during some weeks in 2012 and 2013 for which they did not receive any pay.  (Docs. 62-2 through 62-4, plaintiffs' declarations).

## IV.   DISCUSSION

### A.   CRC's Motion for Partial Summary Judgment

Defendant CRC seeks summary adjudication on plaintiffs' FLSA claims on two grounds: that CRC is not covered by the FLSA because it does not meet the

statutory definition of an "enterprise," and that the plaintiffs are exempt employees because they were employed in salaried, administrative positions. The plaintiffs do not assert that CRC was an enterprise, but they argue that, regardless of whether CRC is an "enterprise" under the statute, they are entitled to individual coverage under the FLSA. They further assert that their duties did not meet the prerequisites for being deemed "administrative" under the FLSA, and therefore were nonexempt.

### 1. "Enterprise" coverage

Defendant CRC has moved for summary judgment on the basis that CRC is not an "enterprise" pursuant to 29 U.S.C. § 207(a)(1), 29 U.S.C. § 203(s)(1)(A)(ii).[3] The FLSA provides that an "enterprise" engaged in commerce:

> (i) has employees engaged in [interstate] commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

---

[3] The defendant actually refers to "Section 203(5)(1)(A)(ii)," but no such section exists, and the court presumes that the "5" referenced in the brief was intended to be an "s."

29 U.S.C. § 203(s)(1)(A)(i) (ii). "To establish an FLSA claim, a plaintiff must show, among other things, *either* 'individual coverage' or 'enterprise coverage.'" Mendoza v. Discount C.V. Joint Rack & Pinion Rebuilding, Inc., 101 F. Supp. 3d 1282 (S.D. Fla. 2015)(emphasis added). See also Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298‑99 (11th Cir. 2011). Where an enterprise is covered, "all its employees are entitled to FLSA protection[, b]ut where an enterprise is not covered, individual employees may still be entitled to FLSA protections." Bautista Hernandez v. Tadala's Nursery, Inc., 34 F. Supp. 3d 1229, 1238 (S.D. Fla. 2014).

Based upon the tax documents submitted as evidence by CRC, CRC did not have sufficient gross revenues during 2012 and 2013 to fall within the ambit of the FLSA's "enterprise coverage."[4] Plaintiffs, however, seek "individual coverage" under the FLSA, which requires that they establish that they were engaged in interstate commerce. Pursuant to 29 U.S.C. § 206(a), the minimum wage provisions of the FLSA apply to employees "engaged in commerce." Similarly, pursuant to 20 U.S.C. §207(a), the overtime provisions of the FLSA apply to any employees "engaged in interstate commerce." The motion filed by CRC seeks

---

[4] Plaintiffs do not make the argument that the tax documents are insufficient to demonstrate the values relevant to FLSA provision.

summary judgment on the issue of whether CRC is liable as an "enterprise" under the FLSA. Even though the plaintiffs do not dispute the volume of business asserted in the tax documents provided, they may proceed with their claims alleging individual coverage under the FLSA. It is not disputed that the work of conducting clinical trials to produce drugs or medical devices to be sold nationwide with approval of the FDA is engaging in interstate commerce. (See doc. 49, p. 11 and regulations cited therein). There is evidence that actual employment activities of each plaintiff implicated interstate commerce, from administering drugs to patients to receiving and accounting for contract payments from pharmaceutical clients. It also is undisputed that CRC was an employer, and that the plaintiffs were employees. Accordingly, the FLSA provides "individual coverage" to the plaintiffs, and they may pursue claims to the minimum wage and overtime provisions of that act unless they fall under an exemption.

### 2. Exemption for administrative positions

Defendant CRC next asserts that the plaintiffs are exempt from the provisions of the FLSA because they were employed in salaried, administrative positions. Although the defendant's brief does not cite to any specific provision, the court assumes that the defendant is invoking 29 U.S.C. § 213(a)(1), which

exempts from overtime and minimum wage provisions "any employee employed in a bona fide executive, administrative, or professional capacity."

Under the FLSA, a job title alone is not determinative of whether the administrative exemption applies. 29 C.F.R. § 541.2; <u>see</u> <u>Klim v. DS Servs. of Amer., Inc.</u>, 2015 WL 12999703 * 3 (N.D. Ga. 2015). The court must interpret the FLSA liberally in favor of the employee, and construe exemptions narrowly against the employer. <u>Id.</u> For an employer to meet its burden of proving that an employee is exempt, it must prove the applicability of the exemption by "clear and affirmative evidence." <u>Birdwell v. City of Gadsden</u>, 970 F.2d 802, 805 (11th Cir. 1992).

An employee is "employed in a bona fide administrative capacity" only if she meets three standards: (1) she receives compensation on a salary basis of no less than $455 per week; (2) her primary duty is office or non-manual work directly related to the management or general business operations of the employer; and (3) her primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. 541.200; <u>see also</u> <u>Furlong v. Johnson Controls World Servs. Inc.</u>, 97 F. Supp. 2d 1312, 1315 (S.D.

Fla. 2000). It is the "exercise of discretion and independent judgment" prong that is at issue here.[5]

As evidence to support the exemption, CRC points to deposition testimony from each plaintiff relating to their duties and discretion. For its motion against Edwards, defendant points to Edwards' testimony that her job title was "[C]linical research consultant." To support its argument that Buchanan was an exempt employee, CRS offers her job description that states she is an exempt administrative employee; her deposition testimony that she performed the regulator function, which was essential to CRC; and her testimony that her duties included "look[ing] over" the budget for each study, sending the budget back to the sponsor

---

[5]    Although the plaintiffs initially argued that they did not meet the "salary basis" test once CRC stopped regularly paying them their salary amounts, they also have argued that the plaintiffs consistently failed to meet the "duties test." "[T]he salary basis of pay also requires that an employee receive 'his full salary for any pay week in which he performs any work without regard to the number of days or hours worked.' 29 C.F.R. §§ 541.212 and 541.118." Furlong v. Johnson Controls World Servs., Inc., 97 F. Supp. 2d 1312, 1316 (S.D. Fla. 2000). The current version of the rule, 29 C.F.R. § 541.602, clearly mandates that an employee is regarded as being on a "salary basis" if she "regularly" receives pay that is not reduced on the basis of the quantity or quality of work performed. Section 541.602(a)(1) states that "an exempt employee *must receive* the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." (Emphasis added). But see Nicholson v. World Bus. Network, Inc., 105 F.3d 1361 (11th Cir. 1997) (holding, on the basis of pre-2004 regulations, that non-payment of salary compensation does not bar finding administrative exemption). Since 2004 the operative regulations have required that the employee actually "receive" salary pay on a regular basis, not simply have an employment agreement calling for salary. Nicholson, at least in part, is based upon a Labor Department rule that was superseded in 2004. See Orton v. Johnny's Lunch Franchise, LLC, 668 F.3d 843, 849 (6th Cir. 2012). Thus, in addition to disputes of fact regarding the plaintiffs' duties, there are disputes of fact also about weeks in which the plaintiffs were not paid (did not "receive) their salary.

of the clinical study, getting the contract signed by the doctor leading the study, filling out documentation for the Institutional Review Board, and getting the patients to sign "informed consent" forms. Finally, the testimony relied upon by CRC to support Brigham-Hoke's administrative role are the plaintiff's description in deposition of her duties as "uploading stuff on the flash drive from the company" for the accounting firm to use in producing financial reports and profit and loss statements, testimony that she made decisions regarding "priorities" in issuing paychecks and paying CRC bills, and the Complaint, which alleges that her primary job duties "included payroll, contract negotiation, and general office management." (Doc. 1, para. 14).

In response to the motion for summary judgment based on the assertion that the plaintiffs are exempt under the administrative exemption of the FLSA, Edwards points to testimony that her duties were little more than collecting data from patients and reporting the data to Kilgore and Farley. (Doc. 64, depo. of Edwards, pp. 12-15). Buchanan, in response to CRC's assertion of the exemption, testified that much of her responsibility was merely "paperwork," filling out forms and making sure documents were signed. She testified that she did not make any significant decisions. (Doc. 63, depo. of Buchanan, pp. 14-20). Brigham-Hoke asserts that her duties also were not administrative, citing that her

work in the accounting department was mostly general office administration, including answer phones, typing, and filing. (Doc. 65, depo. of Brigham-Hoke, pp. 74-75). Each plaintiff denies having to exercise "discretion and independent judgment" in relation to their jobs with CRC.

The conflicts between CRC's assessment of each plaintiff's daily duties, and the plaintiffs' descriptions of their regular work activities, along with the differing assessments of plaintiffs' exercise of discretion at CRC create questions of fact that must be decided by a jury. Wagner v. Murphy Oil USA, Inc., 139 Fed. Appx. 131, 132 (11th Cir. 2005). CRC bears the burden of proving the application of the exemption by clear evidence, and court cannot say that it has done so as a matter of law for purposes of summary judgment. Accordingly, the motion for summary judgment on the basis that the plaintiffs are exempt under the FLSA because they were salaried administrative employees is due to be denied.

### 3. Judicial estoppel based upon bankruptcy

CRC also asserts that it is entitled to partial summary judgment as to any claims brought by plaintiff Edwards because Edwards filed a bankruptcy case in 2010 and did not assert in her bankruptcy proceedings that she possessed an asset in the form of her claims against CRC or the individual defendants. She was discharged from bankruptcy in June of 2014, almost a year before filing her

complaint in this action. CRC relies upon the United States Supreme Court decision in New Hampshire v. Maine, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001), which prevents a party from maintaining inconsistent positions in two separate proceedings. In the context of a Chapter 13 bankruptcy, the Eleventh Circuit Court of Appeals has been wary of extending the doctrine of judicial estoppel where the debtor lacks knowledge of the undisclosed claims and has no motive to conceal them. See Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1296 (11th Cir. 2003). One of the standards required for the application of judicial estoppel urged by CRC is that the inconsistent statement by the plaintiff "must be shown to have been calculated to make a mockery of the judicial system." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir. 2002). The appellate court has noted that "judicial estoppel is meant to prevent litigants from deliberately changing positions after the fact to gain an unfair advantage." Ajaka v. Brooksamerica Mortgage Corp., 453 F.3d 1339, 1345 (11th Cir. 2006). Judicial estoppel must rest on "intentional contradictions, not simple error or inadvertence." American Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1536 (11th Cir.1983); see Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).

17

The court finds in this case that, where the plaintiff filed her bankruptcy petition and was fully discharged more than a year before this complaint was filed, and where she testified that she was unaware that she had any viable claims until after her discharge from bankruptcy, there is no evidence—when viewed in the light most favorable to Edwards—of the type of intentional deception that the courts have required for judicial estoppel. Moreover, there is no indication that Edwards stood to benefit from the failure to disclose this potential asset in a Chapter 13 case in which her creditors were ultimately paid in full.[6] The

---

[6] Estoppel is frequently applied in cases that involve Chapter 7 "no asset" bankruptcy cases in which the plaintiff attempted to simultaneously pursue money damages in an employment action while seeking to forgo paying creditors in a Chapter 7 action. See, e.g., Burnes, 291 F.3d at 1285. Even though a debtor in a Chapter 13 has a similar duty to disclose, Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir. 2010), the evidence as to Edwards is that she did not know she had a cause of action for the unpaid wages until almost a year after her discharge. While she admits she knew that she was owed money, such knowledge falls short of evidencing awareness that she had a viable legal claim under the FLSA to obtain payment of those funds. Inadvertent failure to disclose, or simple error, has been deemed insufficient to trigger estoppel, which requires that the plaintiff intentionally take contradictory positions. 595 F.3d at 1275. "[J]udicial estoppel forbids use of 'intentional self-contradiction... as a means of obtaining unfair advantage.'" New Hampshire v. Maine, 532 U.S. 742, 751, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (quoting and citing with approval Scarano v. Central R. Co., 203 F.2d 510, 513 (3rd Cir. 1953)). Given Edwards' testimony that she was not aware of any legal claim against the defendants until more than a year after she fully paid her Chapter 13 creditors, it is inequitable to give the defendants a potential windfall for an alleged estoppel under which they suffered no prejudice at all. If anything, had Edwards' recognized and disclosed her claim during the bankruptcy proceedings, the trustee could have sued the defendants even earlier than they were in this action. While the court recognizes that a showing of prejudice to the party invoking estoppel is not required, it certainly remains a consideration bearing on the plaintiff's intent and the balance of equities underlying application of judicial estoppel. Cf. New Hampshire v. Maine, 532 U.S. 742, 751, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (judicial estoppel requires a balancing of equities). Here, Edwards had no intent to mislead the court, but through error and inadvertence did not recognize the existence of the claim until after

defendant has failed to show any motive to deceive, and there is no evidence that any creditor was prejudiced by her failure to disclose the existence of these claims when they arose in February of 2014.[7]   Accordingly, the motion for summary judgment as to Edwards' claims on the basis that she failed to disclose the claims in her bankruptcy action is due to be denied.

## B.   Defendant Farley's Motion for Summary Judgment

Defendant Farley seeks summary judgment on all of the plaintiffs' claims against her, asserting that (1) she is not an "employer" liable under the FLSA; (2) none of the conduct complained of can be deemed to be a willful violation of the FLSA; and (3) CRC never waived the administrative-employee exemption that applies to the plaintiffs under the FLSA.[8]   The plaintiffs counter that Farley

---

she fully paid her creditors.

[7]   The inherent unfairness of applying judicial estoppel in this case is stark.   Edwards filed her Chapter 13 petition in 2010, while she was working and being paid by CRC. During 2012 and 2013, CRC started paying her only intermittently due to its own financial hardships.   She loyally continued working, often without pay.   Despite this hardship to her, she continued paying her creditors through the Chapter 13 proceeding, resulting in a full 100% payment of creditors by June 2014. Now, the very employer who *acknowledges* failing to pay her for her work wishes to use its own failure against her in the form of judicial estoppel because she did not recognize and disclose her claim against it soon enough.   Certainly judicial estoppel does not countenance such a windfall to CRC.   Judicial estoppel is an equitable doctrine, see New Hampshire v. Maine, 532 U.S. 742, 751, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001), applicable only to prevent the perversion of judicial integrity.   It is not designed to punish inadvertent or unknowing errors or to provide undeserved windfalls.

[8]   Farley also asserts that plaintiff Edwards' claims are barred by the doctrine of judicial estoppel because she failed to disclose the claims in her bankruptcy proceedings.   For all of the

exercised sufficient control over the business as to be subject to FLSA liability, that the conduct could be deemed willful, and that they are nonexempt employees.

### 1. Farley's liability as an officer/owner of CRC

An FLSA claim may be brought properly against an employer, which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes ... anyone acting in the capacity of officer...." 29 U.S.C. ç 203(d). As the Eleventh Circuit Court of Appeals explained in Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1314 (11th Cir. 2013):

> The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Based on this broad definition, we have joined the "overwhelming weight of authority" and held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)).

reasons discussed *supra*, the motion on this basis is due to be denied.

711 F.3d at 1309.   The court held that the FLSA should be construed broadly enough to find that liability can exist for corporate employees, even those who are not officers, if they "assume more operational control."   711 F.3d at 1311.   How far that liability can extend is not defined by a label, office, or title, but by "circumstances of the whole activity."   Id.

Under prevailing law, a complaint must do more than allege liability by labeling a defendant or concluding that the defendant violated the law; it must provide some facts that support the legal conclusions.   Plaintiffs offer evidence to support that Farley was an owner of CRC and participated in the day-to-day operations of the business, and that she directly supervised Edwards.   Farley occasionally signed paychecks for CRC, and personally paid for health insurance premiums owed by the company and for supplies for the company.   She was aware that, after the business downturn, employees were not being paid at least the minimum wage prescribed by the FLSA.   Although the defendant asserts that the plaintiffs' testimony that they "only" sued her because she was a co-owner evidences that she is not liable, the plaintiffs' lay opinion as to their legal basis for claiming liability is not dispositive.   The facts, viewed in the light most favorable to the plaintiffs, are sufficient to create a genuine issue of fact as to whether Farley

exercised sufficient power over the management of CRC that she could have acted as an employer under the FLSA.

### 2.    Willfulness under the FLSA

Defendant Farley further asserts that, because the failure to pay the plaintiffs was caused by the business downturn and no other reason, the failure to pay was not "willful." Plaintiffs argue that a willful violation may exist where the employer merely disregards the provisions of the FLSA.

The Supreme Court has determined that, under the FLSA, violations may be deemed "willful," giving rise to a three-year limitations period, where the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 1682, 100 L. Ed. 2d 115 (1988) (adopting the standard set forth in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-30, 105 S. Ct. 613, 623-36, 83 L. Ed. 2d 523 (1985) and rejecting the more expansive standard adopted in Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1972), which allowed for a finding of willfulness whenever the employer knew the FLSA "was in the picture"). It is clear from McLaughlin that a finding of willfulness requires more than mere negligence, but that it requires less than a deliberate intent to violate the law. The Eleventh Circuit Court of Appeals has

described the "willfulness" standard as being met when the employer "disregarded the very 'possibility' that it was violating the [FLSA]." <u>Allen v. Board of Public Educ. For Bibb County</u>, 495 F.3d 1306, 1323 (11th Cir. 2007), quoting <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 908-09 (9th Cir. 2003). An employer may act willfully where it "should inquire as to whether [its] actions violate the Act, but fails to do so." <u>Davila v. Menendez</u>, 717 F.3d 1179, 1184 (11th Cir. 2013). The appellate court has further noted that the determination of willfulness is a "mixed question of law and fact" and must be submitted to a jury where there is evidence from which "a reasonable jury could have found" a willful violation. <u>Allen</u>, 495 F.3d at 1324 (internal citations omitted); <u>Davila</u>, 717 F.3d at 1185.

In this case, Farley was an owner of the business, played some role in the operation of the business, supervised Edwards, and was aware that employees were, in some instances, working without getting any pay at all, much less the minimum pay required by the FLSA. A reasonable juror could determine that Farley, like the defendant in <u>Menendez</u>, knew about the hourly wage laws, but failed to investigate whether CRC was complying with them. Accordingly, Farley's motion for summary judgment on the issue of willfulness is due to be denied.

### 3. Waiver of Exemption under FLSA

Farley asserts that plaintiffs were exempt administrative employees, and that CRC's failure to pay them did not trigger a "waiver" of their status as exempt. Farley relies upon <u>Pioch v. IBEX Engineering Services, Inc.</u>, 825 F.3d 1264 (11th Cir. 2016). The employee in <u>Pioch</u> was a computer software engineer, and it was undisputed that he fell within a specific exemption carved out of the FLSA for "computer employees" who earn no less than $27.63 per hour. 825 F.3d at 1266, citing 29 U.S.C. § 213(a)(17). The plaintiff in <u>Pioch</u> was paid on an hourly basis, starting at $50 per hour, and eventually earning $85.40 per hour. He was audited after collecting a per diem, based on his representation that his residence was more than 50 miles from where he was working—a representation that the employer discovered was not true. Determining that the employee had improperly collected $147,230.00 in per diem pay, the company withheld his pay for the last three weeks after he resigned. 825 F.3d at 127. The employee did not dispute that he had been working as an exempt employee under the computer-worker exception, he merely argued that he ceased being exempt during the final three weeks of his employment because he was not paid for those weeks. The court described the plaintiff's case as setting forth the "narrow issue" of whether an employee "who is paid by the hour and who is generally exempt from the FLSA under the

§ 213(a)(17) computer employee exemption" could be deemed non-exempt during the three weeks when his paycheck was withheld.    825 F.3d at 1269.

In Pioch, the court heeded a Supreme Court warning that "extend[ing] an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."    825 F.3d at 1268, quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945).    The court examined three cases from circuit courts that "addressed whether the failure to pay an otherwise-exempt salaried employee" rendered the employee non-exempt; ultimately, the court found that the plaintiff in Pioch was a highly paid hourly worker who was "essentially trying to ... assert a state-law breach of contract claim for his agreed-to hourly rate, through the FLSA."    825 F.3d at 1271.    Defendants contend that Pioch compels the conclusion that the plaintiffs in this case cannot maintain actions under the FLSA because they are simply recasting their contract claims as FLSA claims.

The employment situation of the plaintiff in Pioch is significantly different than the situations of the plaintiffs in this case.    First, as discussed *supra*, the plaintiffs in this case are not highly-paid workers whose pay was withheld because they were accused of theft or deception.    The highest-paid of the three plaintiffs,

Brigham-Hoke, was paid $961 per week, which (assuming a 40-hour week, which she has testified she worked at a minimum) is just over $24 per hour. None of the plaintiffs has been accused of any deception or has received any payments from CRC to which she was not entitled. Secondly, the three plaintiffs are workers paid a weekly salary in a clinical research office, and thus are not hourly computer workers like the employee in <u>Pioch</u>. There is no assertion that the plaintiffs here are subject to the computer-employee exemption, or to any similar job-specific exemption within the FLSA. Indeed, in <u>Pioch</u>, the court of appeals distinguished "salary-basis" exemptions like the administrative exemption at play in this case, noting that the plaintiff in that case fell within a separate, distinct exemption for computer employees. <u>Pioch</u> cannot be read as undermining the DOL's regulations related to salary-basis exemptions, which measure the salary actually "received" by the employee, not what is merely promised in her employment agreement. <u>See</u> <u>Orton v. Johnny's Lunch Franchise, LLC</u>, 668 F.3d 843, 849 (6th Cir. 2012), <u>but see</u> <u>Nicholson v. World Business Network, Inc.</u>, 105 F.3d 1361 (11th Cir. 1997).

The court has determined *supra* that the status of each of the three plaintiffs in this case as either exempt or non-exempt is a question that requires a jury to make factual determinations. Even if plaintiffs were exempt salaried

administrative employees prior to the business downturn, the change in the regularity of the payments could "cause a loss of the exemption" under Department of Labor guidance, as cited by the plaintiffs.[9]    (Doc. 68, p. 3).    Accordingly, the defendant's reliance on Pioch is misplaced.

Defendant's reliance on an older Eleventh Circuit case is equally misplaced. Farley asserts that Nicholson v. World Business Network, Inc., 105 F.3d 1361 (11th Cir. 1997) stands for the proposition that a failure to receive a paycheck does not constitute the waiver of an FLSA exemption.    As in Pioch, the plaintiffs in

[9]    Wage and Hour Division Fact Sheet # 70, paragraph 4 states, "Reductions in the predetermined salary of an employee who is exempt under Part 541 of the Department of Labor's regulations will ordinarily cause a loss of the exemption.    Such an employee must then be paid the minimum wage and overtime required by the FLSA…."    Additionally, paragraph 7 states the following:

> An employer is not prohibited from prospectively reducing the predetermined salary amount to be paid regularly to a Part 541 exempt employee during a business or economic slowdown, provided the change is bona fide and not used as a device to evade the salary basis requirements.    Such a predetermined regular salary reduction, not related to the quantity or quality of work performed, will not result in loss of the exemption, as long as the employee still receives on a salary basis at least $455 per week.    On the other hand, deductions from predetermined pay occasioned by day-to-day or week-to-week determinations of the operating requirements of the business constitute impermissible deductions from the predetermined salary and would result in loss of the exemption.    The difference is that the first instance involves a prospective reduction in the predetermined pay to reflect the long term business needs, rather than a short-term, day-to-day or week-to-week deduction from the fixed salary for absences from scheduled work occasioned by the employer or its business operations.

Dep't. of Labor, Wage and Hour Division, "Fact Sheet # 70: Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues," (Nov. 2009), viewed at https://www.dol.gov/whd/regs/compliance/whdfs70.htm as of May 24, 2017.

Nicholson did not argue that they were nonexempt before their pay was withheld. They argue only that they became nonexempt when the paycheck due under the employment agreement was not issued. Furthermore, the pay due the plaintiffs in Nicholson was not withheld over a long period of time or because of a decline in business, as was the pay at issue in this case.[10] The two plaintiffs in Nicholson were highly paid (at $2,000 and $5,000 per week) by a company that created private lotteries in the former Soviet Union. 105 F.3d at 1362. One plaintiff worked about a week and a half within the United States and about a month in Russia and was never paid (although the time worked outside of the United States is not covered by the FLSA); the other plaintiff worked only a few months for the defendants, and was not paid for a portion of the work he did in the last part of his employment. 105 F.3d at 1362-63. Plaintiffs further point out that the cause of action in Nicholson arose under an earlier salary regulation. They assert that the current regulation, 29 C.F.R. 541.602, narrows the "salary basis" to employees who actually *received* the salary, as opposed to a broader application to employees

---

[10] The court recognizes a difference in the situation of a well-paid salaried employee whose pay is withheld for a short time at the end of his employment. That failure to pay a salary that was agreed to under an express or implied employment contract, fits well within the ambit of a state-law contract action. But in an instance where the failure to pay extends over months or years, it must be concluded that the existence of the agreement to pay the specific salary has been modified or cancelled, and it is at least feasible that the parties are no longer operating under the employment contract.

who were promised the salary under an agreement, even if they were not paid. This reading of the regulations is supported by the Sixth Circuit case of Orton v. Johnny's Lunch Franchise, LLC, 668 F.3d 843, 849 (6th Cir. 2012), cite with approval with respect to the salary-basis test in Pioch v. IBEX Engineering Servs., Inc., 825 F.3d 1264 (11th Cir. 2016).

Farley's motion for summary judgment on the basis that the defendants did not "waive" the plaintiffs' exempt status is premised on the assumption that the plaintiffs were exempt prior to the downturn, and that the downturn and resulting failure to pay the salary did not result in a change of status. The court disagrees. Although the court is mindful of the rationale advanced in Nicholson, that case is grounded on DOL regulations superseded on 2004. Since 2004, the wage-and-hour regulation at 29 U.S.C. § 541.602(a)(1) has defined the "salary basis" test in terms of the salary actually received, not just the promised salary, contrary to the rationale in Nicholson. See Pioch v. IBEX Engineering Servs., Inc., 825 F.3d 1264 (11th Cir. 2016). The FLSA generally requires an examination of wages on a weekly basis, so that in those weeks when no salary was paid, the plaintiffs did not meet the salary-basis test for the administrative exemption—in those weeks they were nonexempt. The administrative exemption

simply did not apply in those weeks when the plaintiffs "received" no salary. Thus the motion is due to be denied.

### C.   Defendant Kilgore's Motion for Summary Judgment

Defendant Kilgore also argues that he is not liable under the FLSA and that there is no evidence of willfulness.   As discussed in relation to Farley's motion, a corporate officer may be liable under the FLSA.   The evidence regarding Kilgore's role in the management of CRC is even more compelling than the evidence relating to Farley.   Kilgore was involved in the day-to-day operations of CRC, and was responsible for hiring, setting hours and pay rates, evaluating employees, and providing work rules.   He directly supervised Brigham-Hoke and Buchanan.   He also knew that the plaintiffs were not always receiving paychecks in 2012 and 2013.   Therefore, for the reasons discussed in relation to Farley's motion, the motion by Kilgore also is due to be denied.

### D.   Plaintiffs' Motion for Summary Judgment

The plaintiffs seek summary adjudication on the following issues:   (1) whether they are entitled to individual coverage under the FLSA; (2) whether they are nonexempt from coverage under the FLSA; (3) whether the individual defendants, Farley, Kilgore, and Reeves are "employers" subject to liability under the FLSA; and (4) whether CRC breached its contract with the plaintiffs.

Defendant CRC did not file any response or opposition to the motion.    Farley and Kilgore each filed a brief in opposition to the motion, and plaintiffs filed a reply. The court will not separately restate all of the facts in the light most favorable to the defendants, but will address, within each issue discussed *infra,* any facts that support the defendants' positions.

### 1.  "Individual coverage" under the FLSA

As noted, CRC has not responded to the plaintiffs' motion.    Kilgore and Farley both responded, but do not address whether "individual coverage" is available to the plaintiffs under the FLSA.    As discussed above in relation to CRC's motion, however, the court finds that "individual coverage" is available to the plaintiffs as a threshold matter.    The question is not whether they engaged in interstate commerce, but whether they are exempt administrative employees determines whether they are entitled to the protections of the FLSA.

### 2.  Exemption from coverage under the FLSA

Both Kilgore and Farley assert that "[u]nder Eleventh Circuit law, the failure to receive a paycheck, in and of itself, does not constitute a waiver of an FLSA exemption."    (Doc. 58, p. 7; doc. 59, p. 2).    Both defendants assert that <u>Pioch</u> compels the conclusion that the plaintiffs are entitled to pursue only breach-of-contract claims because they are exempt from the FLSA.    In their

responses to the plaintiffs' motion, neither defendant asserts any facts to support the comparison to <u>Pioch</u>, except to assert that the plaintiffs were paid a salary, and that the only reason they did not receive pay, or the amount of pay set by the salary, was because of a downturn in business. None of the parties has pointed to any case in which a court has examined the "business downturn" motivation behind a failure to pay, and the court finds none. The court already has concluded that the plaintiffs' status as exempt or nonexempt creates a question of fact for a jury, turning both on whether their job duties were truly administrative and whether they were paid every week on a "salary basis." Even viewing the facts presented in the other motions and briefs in the light most favorable to the defendants, there still exists a genuine issue of material fact. Accordingly, the plaintiffs' motion for summary adjudication of the FLSA claims is due to be denied.

### 3. Liability of the individual defendants

In response to the plaintiffs' motion for summary judgment, Farley asserts that she is not liable individually under the FLSA because she did not have sufficient operational and supervisory control over the business of CRC. She presents evidence that it was defendant Kilgore who hired both Brigham-Hoke and Edwards, determined their pay, evaluated their work, and provided work rules for

them. She further demonstrated that it was Kilgore who set the work hours and established the pay rate for Buchanan. Buchanan reported directly to Kilgore, and Brigham-Hoke reported directed to Reeves, and later directly to Kilgore. Farley does not dispute that she had supervisory authority over Edwards, but has provided evidence that Kilgore hired Edwards, set her pay, evaluated her work, and set her work rules. Although Farley does not dispute that she joined Kilgore and Reeves in setting business hours when the company was formed, she points out that the plaintiffs' testimony indicates that their work hours were later set by Kilgore alone.

Farley has presented evidence from which a reasonable juror could conclude that Farley did not exercise sufficient control over the business that she could be held liable individually under the FLSA. She has demonstrated through plaintiffs' deposition that she did not controll payroll, hiring, firing, or setting compensation. Farley has demonstrated the existence of a question of fact that must be determined by a jury. Accordingly, the motion as to Farley on this ground is due to be denied. The evidence, however, as to Kilgore, remains essentially undisputed. The motion for summary judgment on the issue of whether Kilgore can be held personally liable for any violations of the FLSA is due to be granted.

## 4. Breach of contract by CRC

As an alternative to recovery under the FLSA, plaintiffs seek damages for a breach of their employment contracts with CRC. The plaintiffs have presented documents that demonstrate that each one worked for CRC at a set salary. (Docs. 11, 12, 13). CRC has not disputed that it had agreed to pay each plaintiff a specific annual salary, and that the salary was not paid in full for the time that the plaintiffs continued to work at CRC.

Under Alabama law, a breach-of-contract action may be subject to summary adjudication where the moving party demonstrates that there is no genuine issue of material fact as to these elements: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. In this case, the plaintiffs have shown, and the defendant CRC has not disputed,[11] that it agreed to pay the plaintiffs a certain salary, that the plaintiffs provided work in return for the pay; that CRC failed to pay in full, and that the plaintiffs thereby suffered damages in the form of unpaid wages. See Barrett v. Radjabi-Mougadam, 39 So. 3d 95, 98 (Ala. 2009). Accordingly, plaintiffs have made a *prima facie* showing that CRC breached its employment

---

[11] Not only has CRC failed to rebut the evidence that each plaintiff operated under an employment agreement, but the officers of CRC confirmed that such agreements existed.

agreement to pay each plaintiff for the time worked, and CRC has failed to come forward with any evidence in opposition to the motion for summary judgment. Accordingly, the plaintiffs are entitled to summary judgment in their favor on the breach-of-contract claims, and the motion on this ground is due to be granted. Plaintiffs are entitled to a jury determination of the amount of their damages, although their brief indicates that they would agree to a hearing before the court without a jury in order to determine the amount of their damages.   (Doc. 49, p. 18, n. 3).


## V.   CONCLUSION

Plaintiffs have conceded that they are voluntarily dismissing the claims of breach of contract or quantum meruit against Kilgore.   Therefore, Kilgore's motion for summary judgment (doc. 51 (which incorporates doc. 44)) is due to be granted in part and denied in part.   Counts III and IV are due to be dismissed with prejudice as to Kilgore.   The court also finds that CRC has failed to demonstrate the absence of any issue of genuine material fact as to plaintiffs' claims against CRC for relief under the FLSA.   Therefore, the motion for summary judgment filed by CRC (doc. 45) is due to be denied. The court further finds that the individual defendants, Farley and Kilgore, have failed to demonstrate that they are

not subject to liability under the FLSA or that there is an absence of any issue of genuine material fact as to whether plaintiffs are exempt from the FLSA. Therefore, the motion filed by Farley (doc. 45) is due to be denied. The motion filed by Kilgore (doc. 51) is due to be denied in part, as set forth above. Finally, the plaintiffs' motion for summary judgment (doc. 48) is due to be denied in part and granted in part because the plaintiffs have failed to demonstrate that there exists no genuine issue of material fact as to their FLSA claims against any of the defendants; however, they have shown that they are entitled to a judgment in their favor on the breach-of-contract claims against defendant CRC.

A separate order will be entered.

DATED the 24th day of May, 2017.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE